1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF SOUTH CAROLINA
2                          CHARLESTON DIVISION

3
UNITED STATES OF AMERICA          :
4                                  :
             vs.                   :
5                                  :
THEODORE THOMAS WAGNER            :       2:02 - CR - 181
6

7

8

9        Status Conference in the above-captioned matter held

10   Thursday, December 19, 2013, commencing at 10:37 a.m.,

11   before the Hon. P. Michael Duffy, in the United States

12   Courthouse, Courtroom I, 81 Meeting Street, Charleston,

13   South Carolina, 29401.

14

15

16   APPEARANCES:

17                   MICHAEL R. DeHART, ESQUIRE, Office of the
                    U.S. Attorney, P.O. Box 978, Charleston, SC,
18                  appeared for the Government.

19                   RUSSELL W. MACE, III, ESQUIRE, 1341 44th Ave.,
                    Myrtle Beach, SC, appeared for defendant.
20

21

22
             REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
23        Official Court Reporter for the U.S. District Court
                          P.O. Box 835
24                     Charleston, SC  29402
                        843/723-2208
25

1          MR. DeHART:  May it please the Court, Your Honor, the

2   Government would call the case of United States of America

3   versus Theodore Thomas Wagner, Criminal No. 2:02-181.

4       Your Honor, we call this case for purposes of a supervised

5   release status conference.  Defendant is present and

6   represented by Russell Mace.

7          THE COURT:  Thank you very much.  Mr. Mace,

8   appreciate you being here.  I understand you had some illness

9   in the family; I hope everybody's well now.

10          MR. MACE:  They are now, Judge.

11          THE COURT:  Good.  You may be seated.  Thank you.

12      I scheduled this status conference because I'm very

13   concerned with Mr. Wagner's behavior, particularly towards

14   those that are trying to help him.  I'm trying to determine

15   what the problem is and what we can do about it.

16      I'm going to read into the record the things that have

17   happened, and express to you the concerns I have, and seek an

18   explanation from Mr. Wagner, through Mr. Mace, or however he

19   would like to try to proceed.

20      Mr. Wagner was sentenced back in April of 2003.  Prior to

21   his release from custody, the probation office made contact

22   with him, because they were aware that when he returned, he'd

23   be homeless.  They recommended he be placed in a suitable

24   residence, but he declined, saying he was going to file a

25   lawsuit against the Government upon his release.  And he was

1    provided information about the Crisis Ministry shelter as an

2    option.  That was back in January of 2013.  He was released

3    March 15, 2013.

4        On March 19th there was an official office visit, and

5    during that interview he refused to sign any and all

6    documents.  He asked the probation officer to arrest him.  He

7    stated he was not going to register as a sex offender with the

8    sheriff's office.  He was asked -- he asked if he could

9    contact one of the victims in the case.  He was told he could

10   not.  That victim listed in his case.  And he was given weekly

11   reporting instructions, because he was homeless.

12       March the 22nd he was referred to sex offender treatment.

13   An assessment was done on March 24th.  He was given a bus pass

14   to assist with transportation.

15       On March 26th he reported to the office, and he informed

16   the probation office that he was living under a bridge at the

17   Crosstown.

18       He completed the sexual assessment was placed in the

19   Monday night group and given a 31-day bus pass.  And he asked

20   about a computer.

21       On April 1st, the probation officer referred him to an

22   attorney at the shelter who would assist him with applying for

23   disability.  And the probation officer encouraged him to also

24   apply for Food Stamps.

25       On the 19th the case was staffed with the officer in

1    charge, because of concerns with Mr. Wagner continuing to be

2    homeless.  After a month on the street, the probation officer

3    wanted to see if the subject changed his mind about a more

4    suitable place.

5        On April 22nd the probation officer met with the sex

6    offender counselor.  She did not believe his homelessness

7    placed him in any higher risk than if he had a stable

8    residence.

9        Probation officer gave Mr. Wagner a ride to -- after the

10   group session -- to the bridge where he sleeps, and he again

11   declined placement.

12       On the 29th he was provided with a 31-day bus pass.

13       And on May 13th the probation officer provided a ride to

14   the sex offender group session.

15       On May 28th another 31-day bus pass was given to him.

16       On June the 14th, officer in charge Daugherty had

17   Mr. Wagner report to the office, and spoke with him about his

18   filing divorce papers in Family Court against his victim.  He

19   was advised that he is to have no personal contact with the

20   victim.

21       On June 17th Mr. Wagner called to check in with the

22   probation officer, and he was reminded that he is to have no

23   contact with the victim in the case, either directly or

24   indirectly, and stated he understood that.

25       On June the 19th the officer in charge and the probation

1    officer met with me for guidance in reference to his attempt

2    to contact the victim.  The probation officer was informed by

3    Special FBI Agent Bossert that the subject, meaning

4    Mr. Wagner, came to their office to file a complaint for

5    wrongful prosecution, and wanted them to investigate.

6        On June the 24th Mr. Wagner gave permission -- excuse

7    me -- was given permission to use a computer at the library,

8    and told he could not use social media.  If he did, the

9    computer access would be denied.

10        He was again reminded that he's to have no direct or

11    indirect contact with any victim in the case, and he

12    acknowledged he understood it.

13        On June 29th he had an initial polygraph, and no deception

14    was indicated.  The next polygraph was scheduled for

15    December 21st, 2013.

16        And on July 2nd he was given yet another 31-day bus pass.

17        On July the 8th Mr. Wagner informed probation officer that

18    he posted a divorce notice in the Post and Courier.

19        On July the 29th Mr. Wagner informed the probation officer

20    that his disability was approved on July 25th.  He receives

21    $710 per month beginning August 13th, and a back check of

22    $2130.  He was given yet another 31-day bus pass, and told he

23    would not get another.

24        He signed a waiver to modify conditions to include

25    computer monitoring.  I signed an order for a change which

1    imposed computer monitoring requirements.

2        On August the 1st Mr. Wagner brought in a computer.

3    Probation officer stored it until the software could be

4    installed.  He was given computer participation agreement

5    forms to fill out, and he enrolled in the ADSAP program

6    through the Charleston Center.  On August the 9th the software

7    was installed.

8        On September 3rd he was given yet one more -- three

9    one-day bus passes.

10       On August the -- excuse me -- September that was.

11       On September the 6th, Mr. Wagner informed the probation

12   officer that he was going to file a lawsuit that day in an

13   attempt to clear his name and get off probation.

14       On September 11th he registered as a sex offender with the

15   sheriff's office.  And on September 30th he informed the

16   probation office that he had a chance to get off the street by

17   renting a room, but he needed help with the deposit.

18   Probation officer staff requested $400 from the Second Chance

19   Act fund, funds available to probation.

20       On October 1st he moved into the apartment at 3101 -- 1301

21   Rutledge Avenue.

22       On October 23rd Mr. Wagner's roommate informed the

23   probation officer they were about to be evicted because

24   utilities were disconnected.  The roommate had just started a

25   job, but they needed immediate help.

1      Probation officer asked them -- asked Mr. Wagner to come

2   to the office.  And the probation officer called Charleston

3   Human Services and explained the situation.  They scheduled an

4   appointment, and ended up paying to have the utilities turned

5   on.

6      November the 4th Mr. Wagner was given two one-day bus

7   passes and several low income bus passes.

8      On November 12th Mr. Wagner filed suit against Probation

9   Officers Daugherty, Simmons and Hampton, as well as his

10  treatment provider, Latosha Sparing, and

11  paidcomputermonitoring.com.

12     On November 19th the probation officer did a home visit.

13  At that time Mr. Wagner thanked him for the help with the rent

14  and referral to help with the utilities.  Mr. Wagner stated he

15  is sleeping on the floor; he had no bed or blankets.

16  Mr. Wagner appeared sick and appeared to have the flu.

17     On November 20th the probation officer stopped by and

18  provided Mr. Wagner with blankets, plates, glasses and

19  flatware.

20     On December 12th Miss Sparing, with Family Treatment

21  Center, informed the probation office that she had been named

22  in a lawsuit filed by Mr. Wagner, and because of the pending

23  suit, it's a conflict for her and that group to treat him as a

24  client; therefore, she closed the case.

25     Probation officer informed Mr. Wagner that they were

1    looking into sending him to another program, and he informed

2    them that he would sue the other program as well.

3        On December the 11th Tim Stevenson, a contracted polygraph

4    examiner, informed the probation officer that one of his

5    examiners was threatened with a lawsuit if he tested

6    Mr. Wagner as a subject.  He, therefore, postponed all tests

7    until that situation is resolved.

8        All of Mr. Wagner's drug tests have yielded negative

9    results.  And he's paid 100 of the $200 SA ordered, and

10   completed ADSAP.

11       I put all that into the record because to say that's

12   unusual behavior is an understatement.  To say it's bizarre is

13   closer to the truth.  But it's disrupting the function of this

14   Court, and I'm not going to allow that.

15       So I'm here to ask for an explanation.  I assume all of

16   these lawsuits have been filed pro se and in State Court.

17       Do you know if that's correct, Mr. Mace?

18            THE DEFENDANT:  I'd rather talk.  I have filed them,

19   one in State Court, a divorce, and a lawsuit, two different

20   ones.  And in Federal Court I have filed many.  I've even

21   named you, Judge Duffy, before.  President Obama.  You

22   intercepted one of them, challenging the First Amendment, and

23   you oppressed it.  I have a First Amendment right to file

24   these, and I want such things on the record.

25       Andrea Critzel, Victim A, was 20 years one month 16 days

1    old on June 25, 1999, when she brought her friends over to

2    make her sex tape with her friends, and running off my guest,

3    22-year-old Christensen, to do so.  That is the day that the

4    thing.

5        And she always was having orgies.  She would go off with

6    her friends.  And y'all have made her look like a little child

7    and a victim.  You've covered up that her father gave her

8    venereal diseases, and made it sound like I'm the one that did

9    these things.  She was my wife.  Y'all have covered that up

10   from day one.

11       The Police Officer, Andy Cruise, was arrested on sex

12   charges at the exact same time that he went and committed

13   perjury to get the warrants.  I've put it in for evidence

14   all -- over and over, by SLED.

15       Let's see.  Rhett DeHart was clear that he knew Andrea was

16   20 years one month 16 days old when they named her Victim A,

17   which is on the grand jury transcript on page nine and page

18   six.  And so they were quite aware that Andrea was an adult,

19   and kept covering it up.  She was four-foot nine and weighed

20   90 pounds, even up to where she was 23 years old.  A picture

21   was held up in court with her 20 years old, and y'all kept

22   saying that little child.  She was 20 years old.  She went off

23   to orgies.  She's still after that.

24       All these people hung out at our house, but none of them

25   ever had the orgies and stuff.  They'd go across the street,

1 they'd go to Barbie's parents', my mother's when they weren't

2 home.  They did this stuff all the time.  But you've made it

3 sound like -- This is something I don't do.  And y'all made it

4 sound like this is me, and you covered up that it's Andrea,

5 that she goes and would -- they'd sit and watch.

6  She worked La Petit Day Care.  And during the night, she'd

7 sit and spend hours and hours, and they'd collect child porn,

8 not on my computer, y'all have my computer.  And you would not

9 let me get it to prove I'd never been to a porn site.  I don't

10 go to porn sites.

11  She would go over to JJ Clark's, Amara Jane Ziland's

12 (phonetic) house, and spend hours collecting thousands of

13 pictures, the age group she was baby-sitting at La Petit Day

14 Care.  All of this was covered up.

15  And the main thing that she was my wife.  The State

16 vacated the charges right at the very beginning.  I tried to

17 use all this same evidence in the Federal Government, and the

18 Federal Government just stopped it.  And you are the one,

19 Judge Duffy, who uses your authority to stop a lot of it.

20  I am going to continue to sue everybody for part of

21 ongoing conspiracy to oppress my civil rights.  Until the

22 First Amendment issue is heard, Congress shall make no law

23 respecting the right of the people peaceably to petition for

24 redress of grievances.  I keep filing them, and they

25 get oppressed using things like antiterrorism effective Death

1    Penalty Act, Prison Litigation Reform Act.  These are laws

2    unlawfully made.  And I put these petitions into the court,

3    and you intercepted them and stopped them.

4        And I'm still -- that's what part of the thing I just

5    filed against Mr. Simmons and everything, just before that.

6    The first day I got out, I filed it against President Obama

7    and stuff, because I sent him letter after letter.

8        Every one of y'all make the same oath, 5-33-31, that you

9    will defend the United States constitution.  But the

10   constitution seems to go to the side, if you want to cover up

11   evidence and put somebody else in there.  I want the whole

12   truth and nothing but the truth.  That's a Ninth Amendment

13   right.  I reserve that.

14       That I don't like children, I have never wanted to have

15   sex with children, and y'all have labeled me something that --

16   and then covered up, used your authority, and he used his

17   authority, Rhett DeHart.  And Ann Walsh flat out lied to me.

18   She even admitted in a transcript she withheld the evidence

19   from me.  When Barbie drove from Atlanta, when she found out

20   about it, her and her fiancé rented a car, drove to Charleston

21   to meet with my lawyer to testify that I did not.

22       And she got up there and hid it all from me, and sat there

23   and lied to me.  And when I got word back from Barbie from

24   somebody else, they said that she kept handing her a card for

25   the prosecutor, going, you need to go to the prosecutor, you

1    need to go to the prosecutor.

2         I mean, everything, and every question I asked Ann Walsh,

3    she lied to me.  Andy Savage wouldn't represent me to

4    challenging warrants that Mr. Cruise, Detective Cruise, who

5    was, you know, whacking off on the neighbor's kids, and he was

6    arrested for it, he goes and represents that man.  But he told

7    me, I'm only here to sentence you, I'm not going to challenge

8    anything against Detective Cruise.  But then he goes and

9    represents Detective Cruise on sex charges that were going on

10   at the same time that he was -- went and got warrants for me.

11        I mean, it's just -- I don't feel like I ever had a

12   lawyer, and I told you that.  I don't -- when you said -- and

13   you said in court, that's one thing, that's all it should

14   take.  I have not been sentenced yet.  I was trying to defend

15   myself, while my lawyer sat by me and wouldn't do nothing.

16        And there's just tons of facts.  And that's what the other

17   lawsuit is for, is I want every bit of the facts.  And see,

18   coming in here, you're the authority, and I have to like

19   submit to anything you do to me.  There, I am the plaintiff,

20   and I get the right to bring stuff in and challenge.  And so

21   that's why I brought that one.

22             THE COURT:  Very good.  Thank you.

23        Mr. Mace, it's my intent to have Mr. Wagner taken into

24   custody for an evaluation at Butner.  And I'm going to ask the

25   marshals to take him into custody for that purpose today.

1    Before I do that, would you like to be heard on anything

2    further in that regard?

3            MR. MACE:  Well, Judge, I don't quite understand why

4    the Court would be taking him into custody for the evaluation.

5    It seems like he's cooperated at every point with everything

6    Probation's asked him to do.  The only thing that he's done is

7    possibly disrupt the function by what he has described as

8    using his right to sue.  So if the Court's inclined to get him

9    evaluated, I would ask the Court to allow him to report, or

10   have a local evaluation done where he could actually go to it,

11   instead of having him taken into custody, when I don't think

12   he's violated any terms of his probation.

13           THE COURT:  Well, I considered his threatening

14   everybody who is carrying out the orders of the Court, in

15   trying to deal with him on supervised release, as a violation.

16   Haven't adjudicated that, hadn't asked him to be charged with

17   that.

18       What I'm concerned about is this.  Because of what he just

19   said, and what he's done heretofore by just threatening

20   everybody that he comes into contact with, with a lawsuit,

21   that nothing is going to result, other than more of that, if I

22   don't take him into custody.  He doesn't have the wherewithal

23   financially or anywhere else to self-report, because he was

24   living under a bridge.  And they finally got him into a place

25   where he's safe and more comfortable, and he filed suit

1    against them for it.

2        So give me an alternative.

3            THE DEFENDANT:  Sir, I --

4            MR. MACE:  Hold on.  The alternative, Judge, would be

5    if you want him to be evaluated at Butner, is to get him a bus

6    ticket to report to Butner.  If he's been using --

7        (Brief interruption in proceedings.)

8            MR. MACE:  But to take him into custody, Judge, for

9    him to wait and see when the Marshal Service or when Butner

10   will be available to evaluate him, he could be in there for

11   months.

12           THE COURT:  All right.  Let me talk to Mr. Wagner, if

13   I may, directly about that.  Mr. Wagner, would you report

14   voluntarily, if given -- allowed the opportunity to do that?

15           THE DEFENDANT:  Yes, sir, I'll do whatever I'm told.

16   I just ask that you not oppress my -- like I have a court date

17   on the 14th of next month for my divorce with Andrea Critzel

18   to try to get her to come in and prove that all of that was a

19   lie.  I've got other --

20           THE COURT:  Stop right there, let me ask you about

21   that.  You have a court date in Family Court in Charleston

22   County?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  And you're representing yourself?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  And has this other lady been served and

2     has a lawyer or what?

3          THE DEFENDANT:  She has not responded.  She has been

4     lawfully served.

5          THE COURT:  And do you know what judge that's pending

6     before?

7          THE DEFENDANT:  No, it changed judge, but when I went

8     in the last time, it was a different judge than the time

9     before.  And I'm not sure if that -- I'm not sure if -- they

10    can just change judges, apparently.  I don't know how it

11    works.  I just know that the Clerk of Court, when I went back

12    in and filed the last papers, she gave me a stamped paper

13    saying that the court date had been given for January 14.  And

14    I called Mr. Simmons and, you know, reported.  I report

15    everything.  I'm not trying to -- I do whatever I'm told, go

16    where I'm told.  I'm on disability.  I have, you know, I don't

17    go anywhere I'm not supposed to.  I do everything I'm told.

18      I'm just exercising my right to, you know, to sue anybody

19    that I feel is part of this oppression.  But I am not going

20    to -- If you tell me to do something, sir, I will do it.  I'm

21    just asking you not to oppress my right to get the truth on

22    the record and prove that I didn't do this.  I have been

23    fighting, I have never stopped fighting.  I've got like

24    600 pounds of legal work.  I have never stopped filing, and I

25    have never stopped fighting to prove the truth, since the day

1    I found out before I was ever sentenced.  I was trying right

2    in front of you, doing my best.

3              THE COURT:  Okay.  I'm not giving the U.S. Attorney a

4    chance to say anything; he wants to be heard.  Go ahead,

5    Mr. DeHart.

6              MR. DeHART:  Just very briefly, Your Honor, we

7    support your decision to get Mr. Wagner evaluated.  I just put

8    a couple of points on the record that I'd like him to hear.

9    And just, Judge, the evidence indicates to us that he is

10   delusional.  If you go back to when he was indicted, I think

11   it bears repeating that he pled guilty to production of child

12   pornography.  So it wasn't as if he was just convicted at a

13   trial and maintained his innocence throughout.  He pled

14   guilty.  That's significant, Your Honor.

15        And secondly, the grand jury transcript that he handed me,

16   he's completely misreading it.  The victim testified that --

17   excuse me -- that the FBI agent testified that one victim was

18   16 years old.  The other two victims that Mr. Wagner had sex

19   with and videotaped, were 17 years old.  Nowhere in there do

20   they say that the victims were adults.

21        It appears to be, Your Honor, that he is delusional.

22        As to Mr. Mace's suggestion, and I can see why he would

23   make it, that why didn't he have an outpatient evaluation.

24   Our concern there is, Judge, if he is evaluated by a local

25   doctor, he will simply threaten to sue that doctor, that

1    doctor won't evaluate him, we'll be right back here where we

2    are today.

3        So it does seem to us an inpatient evaluation at Butner

4    would be in everybody's best interest.

5            THE COURT:  All right, thank you.  Mr. Mace --

6    Mr. Wagner, just hold on a second.  I think he needs to be

7    evaluated for his own best interests, and for the Court to be

8    able to deal with him.  I think your points are well taken.

9    And he's said he will self-report, so I'm not going to have

10   him taken into custody, with the understanding that when he's

11   informed by Butner or wherever he's asked to report, that he

12   report on time himself, without supervision or being taken

13   into custody by the marshals.

14       Do you understand that, Mr. Wagner?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Okay.  We'll do it that way.

17       Now, should your notification come prior to your hearing

18   in Family Court, I expect you to still report to Butner, and

19   we will deal with the Family Court to reschedule it when you

20   get out.  But you will not use anything as an excuse not to

21   report to Butner.

22           THE DEFENDANT:  May I ask you to please just --

23   because they can schedule it afterwards.  This is very

24   important to get this on the record.

25       And another thing, he said I never had sex with anybody,

1    and --

2              THE COURT:  I don't want to debate that part of it.

3              THE DEFENDANT:  But that is the thing, I never had

4    sex with them, I didn't bring them over, I didn't use the

5    camcorder.  And before I pled guilty, and Ann Walsh was

6    elbowing me, telling me I had to, I said I let them use my

7    camera, and that's on the transcript.  And she kept telling me

8    that you'd give me life in prison if I went to court.  And she

9    had me scared to death.  I was DT-ing.  I had drank a half

10   gallon a day before.  I just started stopping drinking before

11   I went into this.

12             THE COURT:  Let me ask you something you just

13   mentioned.  Are you requesting this Court to ask the Family

14   Court to reschedule for you until you finish with the

15   evaluation?

16             THE DEFENDANT:  No, I'm asking for the evaluation to

17   be after -- that's less than a month -- I'm asking for nothing

18   to interrupt this court hearing.  I have been going back, I've

19   been refiling, they'll tell me I filed a piece of paper wrong,

20   and I'll go and refile it correctly, and then I'll get a court

21   order to do something else and I'll do it.  And this is just

22   going on since the day I got out of prison in March.  And I

23   finally got to the point where they said, well, now you've got

24   everything correct, we'll have this hearing on -- and it's two

25   months away.  And so now I've waited a month, over a month,

1    and I'm coming up on the court date, I would rather not be

2    postponed one more time.

3         And I want to put on the record that I never had -- that's

4    why I want Andrea in.  They still haven't admitted Andrea was

5    born May 9, 1979.  Victim A.  It happened on June 25th, 1999.

6    She was 20 years one month 16 days old.  She is the only

7    person what had sex with anybody.  I never had sex with

8    anybody.  I was there with Candace Christensen, a girl that

9    Andrea brought over for me to meet and all, and I never

10   touched her.

11        THE COURT:  Stop right there.  I don't want to hear

12   all that.  We're trying to get straight with your court

13   schedule at the moment.  Okay?

14        Now, I'm going to ask the federal facility at Butner,

15   North Carolina to evaluate you.  Mr. Mace has a good point; it

16   may not happen for awhile anyhow, because they have very

17   limited space, and the holiday season being what it is, et

18   cetera, they may ask you to report later.  So I'm going to set

19   that up, and you're going to report, as you've said you will,

20   whenever you're told to be there.  It may well be after your

21   Family Court hearing.  But if it's before then, which I doubt,

22   but if it is, I expect you to show up at Butner.  And we'll

23   take care of getting you an expedited hearing in the Family

24   Court when you get back.  But Butner is much harder to

25   schedule than the Family Court.  So that will take priority.

1    We have that understanding?

2            THE DEFENDANT:  Yes, sir.  Do you know how long an

3    evaluation takes?  I've heard stories, horror stories of

4    people coming in and being stuck there for a year, and they

5    only saw somebody for two days for the evaluation.

6            THE COURT:  No, it won't be anything of the kind, I

7    can assure you that.  Usually it's 45 days, and if there's a

8    problem, they might ask for an extension, but it isn't a year

9    or anything of the kind.

10            THE DEFENDANT:  I have never -- I did everything at

11    the showing up for those classes and whatever.  I have done

12    everything that my probation officers told.  And to have to go

13    for -- I just spent 12 years in prison for something that

14    Andrea had a part in doing, and now I'm going to go spend 45

15    more days?  I had to go and talk to counselors and stuff all

16    the time I was at Seagoville.

17            THE COURT:  That's a different analysis.  Now, don't

18    talk to me out of it.  If you're telling me you have any

19    doubts about you going to report --

20            THE DEFENDANT:  No, I don't have any doubts.

21            THE COURT:  Okay.  Then let's leave it there.  Okay.

22        Anything further, Mr. Mace?

23            MR. MACE:  No, sir.

24            THE COURT:  Anything from the Government?

25            MR. DeHART:  No, Your Honor.

1      THE COURT:  That's ruling of the Court.  Thank you

2  very much.

3      THE DEFENDANT:  Your Honor, can I have a copy of this

4  transcript?  I'm indigent and can't afford one.  I'd like a

5  copy of the transcript, if I could, please, sir.

6      THE COURT:  You can have a copy of the transcript --

7  We'll determine whether you're indigent or not.  I assume you

8  are, from what I know, but if you're getting disability checks

9  and all that, I don't know what your income is, whether you

10  can afford to pay for a transcript or not.  You'll have to

11  fill out a form for that.

12      THE DEFENDANT:  Okay.  Serve it to you?  Have it

13  delivered to you?

14      THE COURT:  Just file it with the clerk.

15      THE DEFENDANT:  I'd like to put this on the record,

16  too, please, sir, this paperwork.

17      THE COURT:  What is it?

18      THE DEFENDANT:  It is part of my grievance, and I

19  would like --

20      THE COURT:  You want to put that part of the record

21  of this hearing.

22      THE DEFENDANT:  Yes, I would, part of the record of

23  this hearing.

24      THE COURT:  That would be fine.  Thank you very much.

25     Mr. Mace, thank you, and I appreciate your being available

1    during this tough season.  Mr. DeHart, thank you.  Everyone

2    else as well.  Thank you.  We'll be at recess.

3

4        (Court adjourned at 11:06 a.m.)

1                    REPORTER'S CERTIFICATION

2

3          I, Debra L. Potocki, RMR, RDR, CRR, Official Court

4   Reporter for the United States District Court for the District

5   of South Carolina, hereby certify that the foregoing is a true

6   and correct transcript of the stenographically recorded above

7   proceedings.

8

9

10

   S/Debra L. Potocki
11  _____

12  Debra L. Potocki, RMR, RDR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25